IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALYN JABLONSKI, <br> on behalf of plaintiff and the classes <br> defined below; and <br> PEOPLE OF THE STATE OF ILLINOIS <br> ex rel. GERALYN JABLONSKI, <br><br> Plaintiffs, <br><br> vs. <br><br> RIVERWALK HOLDINGS, LTD., <br> RIEXINGER & ASSOCIATES, LLC, <br> and BAKER & MILLER, P.C., <br><br> Defendants. | 1:11CV840 |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION
PURSUANT TO FED.R.CIV.P. 23, WITH RESPECT TO COUNTS II AND III**

Plaintiff Geralyn Jablonski has brought a motion for class certification, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), as to two classes of individuals with claims under the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq*. ("ICAA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"). This memorandum is submitted in support of that motion.

**I.      THE FDCPA AND THE ICAA**

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). This law "is designed to protect consumers from unscrupulous collectors, regardless of the validity of the debt." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt. It also requires debt collectors to give debtors certain information about alleged debts, and about their rights as consumers. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the

1

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule.... [The] vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

95 S.Rep. 382, at 3 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1697.

*Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008) held that

> **the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct. This intent cannot be underestimated.**

See *Sonmore v. CheckRite Recovery Services, Inc.*, 187 F.Supp.2d 1128, 1132 (D.Minn. 2001) (the FDCPA "is a remedial strict liability statute which was intended to be applied in a liberal manner"); *Owens v. Hellmuth & Johnson PLLC*, 550 F.Supp.2d 1060, 1063 (D.Minn. 2008) (same); and *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (the FDCPA should be "[construed]... broadly, so as to effect its purpose"). Further, "Congress intended the Act to be enforced primarily by consumers...." *Federal Trade Commission v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

The Seventh Circuit has long held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003), held that the "test for determining whether a debt collector violated [the FDCPA] is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)."

Ms. Jablonski does not need to prove intent, bad faith or negligence in order to prevail on

2

FDCPA claims; "debt collectors whose conduct falls short of [the FDCPA's] requirements are liable irrespective of their intentions." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 805-806 (7th Cir. 2009). And pursuant to 15 U.S.C. §1692k, statutory damages are recoverable for violations regardless of whether the consumer proves actual damages – "[all] that is required is proof that the statute was violated, although even then it is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). *Accord*, *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 444 (N.D.Ill. 2008); *Blarek v. Encore Receivable Management*, 244 F.R.D. 525, 528 (E.D.Wis. 2007).

The ICAA is the Illinois analog to the FDCPA. It was intended to protect consumers from unfair debt collection practices. *People ex rel Daley v. Datacom Sys. Corp.*, 146 Ill.2d 1, 16-17; 585 N.E.2d 51, 58 (1991).

## II.　STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 1004-1005; 574 N.E.2d 760, 766 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action – private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.**

Accord, *Clark v. TAP Pharma. Prods,. Inc.*, 343 Ill.App.3d 538, 552; 798 N.E.2d 123, 134 (5th Dist. 2003).

Meanwhile, *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), held that "Rule 23(b)(3) was designed for situations.... in which the potential recovery is too slight to

support individual suits, but injury is substantial in the aggregate." The claims made here under consumer protection laws would, collectively, provide Ms. Jablonski with a small sum of money that is not commensurate with the fouls committed by defendants. Recently, the Second Circuit noted that class actions allow for the aggregation of small claims held by many consumers. Denial of certification would lead to a situation where consumers holding a small claim would be less likely to pursue relief given the costs involved, to the benefit of businesses which, in violating the law, obtain a significant financial benefit from their actions without fear of meaningful litigation. *Ross v. Bank of America NA*, 524 F.3d 217 (2d Cir. 2008).

In *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D.Ill. 2010), the Court held that "in deciding whether to certify a class, the court may probe beyond the pleadings to make whatever factual or legal inquiries are necessary to determine whether class treatment is appropriate. *Szabo v. Bridgeport Mach, Inc*, 249 F.3d 672, 677 (7th Cir. 2001)." However, this Court "must evaluate the class certification motion without regard to the ultimate merits of [a] plaintiff's claims. *Id.* at 326 n.2 (citing *Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831, 835 (N.D.Ill 2008). Upon review of all of the relevant pleadings, facts and law, this Court should find that all requirements set forth by Fed.R.Civ.P. 23(a) and 23(b)(3) are met in this case.

Congress expressly recognized the propriety of a class action under the FDCPA, by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and 1692k(b) class action cases. As a result, numerous FDCPA class actions have been certified – including many handled by counsel representing Ms. Jablonski in this case, such as *Hale v. AFNI, Inc.* 264 F.R.D. 402 (N.D.Ill. 2009); *Castro v. Collecto, Inc.*, 256 F.R.D. 534 (W.D.Tex. 2009); *Randolph v. Crown Asset Management LLC*, 254 F.R.D. 513 (N.D.Ill. 2008); *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D.Ill. 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008); *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291 (N.D.Ill. 2007); *Hernandez v. Midland Credit Management, Inc.*, 236 F.R.D. 406 (N.D.Ill. 2006); *Lucas v. GC Services LP*, 226 F.R.D. 337 (N.D.Ind. 2005); *Carbajal v. Capital One FSB*, 219 F.R.D. 437

(N.D.Ill. 2004); *Morris v. Risk Management Alternatives, Inc.*, 203 F.R.D. 336 (N.D.Ill. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark LLC*, 198 F.R.D. 503 (N.D.Ill. 2001); *Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46 (D.Conn. 2000); *Vines v. Sands*, 188 F.R.D. 302 (N.D.Ill. 1999); and *Clark v. Retrieval Masters Creditors Bureau, Inc.*, 185 F.R.D. 247 (N.D.Ill. 1999).

### III. THE PROPOSED CLASSES SATISFY FED.R.CIV.P. 23

#### a. Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D.Ill. 2010) held that

> **plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D.Ill. 1995)** (quotations and citations omitted).

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, 266 F.R.D. 215, 218 (S.D.Ind. 2010), noted that

> **the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient... Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers... would be practical" so class certification was inappropriate.**

This is in line with the basic presumption that joinder of more than 40 persons is generally considered impracticable. *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *accord, Hale*, *supra*, 264 F.R.D. at 404-405.

Here, there are at least 346 members of the class, based on discovery provided by Baker & Miller in this action. (Motion, Exhibit 1 at 8.) Formal, supplemental responses are being provided by other defendants, showing that there are more class members. However, for the purposes of proving numerosity, the information of record demonstrates that joinder of all class members would certainly be impracticable.

5

b.     **Rules 23(a)(2) and 23(b)(3)  – Commonality and Predominance**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

*Hale*, *supra*, 264 F.R.D. at 405, 407, held that

> **Commonality generally exists when the defendant has engaged in "standardized conduct" toward the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, [234 F.R.D. 648, (N.D. Ill. 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). ...**
>
> **Rule 23(b)(3)'s predominance requirement is typically satisfied where the central, common issue is whether the defendant's form letter violates the FDCPA. See *Quiroz v. Revenue Production Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (finding that predominance was satisfied where the common question was whether the defendant's form letter violated §1692e); see also *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 418-19 (N.D. Ill. 2007) (finding that predominance was satisfied where class members received "very similar" letters, and the common legal issue was whether those letters violated the FDCPA); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (same).**

More generally, *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974) held that satisfaction of the predominance requirement of Fed.R.Civ.P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy?"  *Accord*, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D.Ill. 1995).  See *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 506-507 (S.D.Ind. 2007) (similar).

In this case, the essential facts that link all class members are that (1) Riverwalk filed suits (through Baker & Miller) without possessing a collection agency license (see Motion, Exhibits 1, 2, 3 & 5) and (2) Riexinger and Baker & Miller sent letters on Riverwalk's behalf threatening suits (see Motion, Exhibits 1 and 4) – all in an attempt to collect on alleged consumer debts.  Each of the class members had their rights violated in the same manner by defendants.

The only individual issue is the identification of the members of the class, a matter

capable of ministerial determination from defendants' records. Questions readily answerable from a defendant's files do not present an obstacle to class certification. *Heastie v. Community Bank*, 125 F.R.D. 669 (N.D. Ill. 1989) found that the commonality and predominance requirements were met even though there were individual questions of injury and damages; those questions could be answered "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank." *Accord*, *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 347 (N.D.Ill. 2008) ("some factual variation among the class grievances will not defeat a class action.... so long as those individual issues are manageable through bifurcated hearings or some other mechanism that allows the common issues to be adjudicated together").

The Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *Id.*

    c.    **Rule 23(a)(3) – Typicality**

Fed.R.Civ.P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to

7

the claims of other class members and his or her claims are based on the same legal theory."
(Citation and internal quotation marks omitted.) *Accord*, *Driver*, *supra*, 265 F.R.D. at 304.

In the instant case, typicality is inherent in the class definition. By definition, the members of the class were subjected to the same practices as the plaintiff, and thus suffered the same violation of the FDCPA and ICAA that Ms. Jablonski suffered.

    **d.**    **Rule 23(a)(4) – Adequacy of representation**

The rule also requires that a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) a plaintiff must not have interests antagonistic to those of the class. *Rosario*, *supra*, 963 F.2d at 1018. *Accord*, *Hale*, *supra*, 264 F.R.D. at 406.

Both of these considerations are satisfied here. Ms. Jablonski understands the obligations of a class representative, and has retained experienced counsel – as is indicated by Exhibit 6 to the motion, which sets forth counsel's qualifications. To date, Ms. Jablonski has participated in a settlement conference and has responded to written discovery, all in line with her duty to conscientiously pursue the matter as the named plaintiff. Further, both plaintiff and members of the classes seek money damages as the result of defendants' unlawful collection practices, provided for by 15 U.S.C. §1692k. Given the identity of claims between plaintiff and members of the class, there is no potential for conflicting interests in this action. There is no antagonism between the interests of Ms. Jablonski and those of the class.

    **e.**    **Rule 23(b)(3) – Superiority**

*Hale*, *supra*, 264 F.R.D. at 407, noted that "the Seventh Circuit has held that class actions are especially appropriate for resolving FDCPA claims. See *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000); *Randolph*, [*supra*, 254 F.R.D. at 520]. Where, as here, the defendant has 'engaged in standardized conduct by sending form letters to many consumers, and each individual consumer's claim would likely be too small to vindicate through

an individual suit,' a class action is the most efficient, effective way to proceed. *Quiroz*, [*supra*, 252 F.R.D. at 444]; see also *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)."

*Randolph* further held that "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.... the Seventh Circuit has noted that although the FDCPA allows for individual recoveries, this assumes that the plaintiff is aware of his or her rights, willing to be subjected to litigation and able to find an attorney to take the case. *Mace*, [*supra*, 109 F.3d at 344]. 'These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.' *Id.*" *Randolph*, 254 F.R.D. at 520.

In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom defendants are attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

## IV.   CONCLUSION

The proposed class meets the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3). Plaintiff respectfully requests that this Court certify this action as a class action.

Respectfully submitted,

s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

9