IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GERALYN JABLONSKI, on behalf of plaintiff and the classes defined below; and PEOPLE OF THE STATE OF ILLINOIS ex rel. GERALYN JABLONSKI, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:11CV840 |
| RIVERWALK HOLDINGS, LTD., RIEXINGER & ASSOCIATES, LLC, and BAKER & MILLER, P.C., | ) ) ) ) | Judge Manning Magistrate Judge Valdez |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF AWARD OF DAMAGES ON
DEFAULT JUDGMENT ENTERED AGAINST RIVERWALK HOLDINGS LTD.**

This Court has ordered plaintiffs to submit a brief in support of the entry of default judgment against Riverwalk Holdings Ltd., per its order of January 26, 2012, upon the recommendation of the Magistrate Judge. (Exhibit 1.) Plaintiffs seek the award of injunctive relief, actual damages, punitive damages, statutory damages, attorney's fees, costs, and an incentive award to Geralyn Jablonski, all as set forth below. In support of the same, plaintiffs state as follows:

**I.     BACKGROUND**

   *A.     The claims*

Plaintiffs Geralyn Jablonski (for herself and a putative class) and the People of the State of Illinois (through Ms. Jablonski) brought three claims against Riverwalk Holdings Ltd. ("Riverwalk"). These claims stem from the fact that

   (a)   Riverwalk was not licensed as a debt collector in the State of Illinois;

   (b)   debt buyers like Riverwalk were required to be licensed by the Illinois

          Department of Financial and Professional Regulation ("IDFPR"), pursuant to the

1

    Illinois Collection Agency Act, 225 ILCS 425/1 *et seq*. ("ICAA") no later than January 1, 2008; and

 (c) Riverwalk collected money from Illinois consumers after January 1, 2008 anyway.

 Riverwalk sought to collect on a debt allegedly owed by Geralyn Jablonski through (a) collection letters sent by Riexinger & Associates LLC ("Riexinger"), and (b) a lawsuit filed by their counsel, Baker & Miller P.C. ("Baker & Miller"). (Docket No. 1, Exhibit A ("Complaint"), ¶¶22-26.) It did so while it was unlicensed. (*Id*., ¶6.) During the course of discovery in this case, Ms. Jablonski produced to Riverwalk (and the other defendants) a copy of a certification from the IDFPR, stating that Riverwalk did not hold a license to act as a collection agency. (Exhibit 2.) Pursuant to 225 ILCS 425/4, Riverwalk was required to hold such a license:

> **No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.**

Amendments to the ICAA, effective as of January 1, 2008, made it clear that debt buyers, like Riverwalk, were "collection agencies" under the ICAA definition. 225 ILCS 425/3(d) provides that "a person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it.... [buys] accounts, bills or other indebtedness and engages in collecting the same." Meanwhile, 225 ILCS 425/2 provides that "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." 225 ILCS 425/2.

 Count I of the complaint, brought by the People of the State of Illinois ("the People"),

sought relief as provided for by 225 ILCS 425/14a:

> **The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or *any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice.* Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. *If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees.* In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.** [Emphasis added.]

The People specifically prayed for "(a) an injunction prohibiting further collection activity by Riverwalk Holdings, Ltd. within Illinois, and requiring disgorgement of the proceeds of all collection activity previously undertaken in Illinois, (b) attorney's fees, litigation expenses and costs [and] (c) such other and further relief as is appropriate." (Complaint, ¶¶27-31.)[1]

Count II of the complaint, brought by Ms. Jablonski and a putative class, seeks relief from Riverwalk's violation of 225 ILCS 425/9, including specifically 225 ILCS 425/9(20) and 425/9(31) which prohibit collection agencies from "attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist... [or engaging] in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public." Under this count, Ms. Jablonski seeks actual damages, punitive

---

[1] It should be noted that Count I is not a class claim, under Fed.R.Civ.P. 23. Therefore, judgment may be entered on behalf of the People and against Riverwalk, irrespective of the fact that the fully-briefed class certification motion before the Court remains pending.

damages, nominal damages, costs of suit, [and] such other and further relief as the Court deems proper. (Complaint, ¶¶32-42.)

Count III, brought against all defendants by Ms. Jablonski for herself and a putative class, seeks relief for violations of the Fair Debt Collection Practices Act.[2] As to Riverwalk, its representation that it could collect money owed to it (through the actions of Riexinger and Baker & Miller) were false statements in the course of debt collection attempts, contrary to 15 U.S.C. §1692e:

> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **(2)     The false representation of--**
>
>   **(A)     the character, amount, or legal status of any debt; . . .**
>
> **(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken.... [or]**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

### B.     *Discovery, and Riverwalk's default*

During the course of discovery, Riverwalk conceded that it was not licensed as a collection agency under the ICAA. (Exhibit 3.) It also disclosed (through e-mails between counsel for the parties, in the course of resolving discovery disputes) that Riverwalk collected from Illinois residents approximately $64,500 in 2010, $86,319.45 in 2009, and $69,308.16 in 2008 – or an approximate total of $220,127.61. (Exhibit 4.)

On September 28, 2011, counsel for Riverwalk filed a motion for leave to withdraw as

---

[2] Claims were brought in this case against both Riexinger and Baker & Miller, for alleged violations of the Fair Debt Collection Practices Act. Ms. Jablonski and Baker & Miller agreed to a classwide settlement, which is the subject of a pending motion for preliminary approval of the settlement. (Docket No. 92.) Riexinger is still contesting the claims of Ms. Jablonski, with respect to a pending motion for class certification (Docket No. 77) and also on the merits (through summary judgment motions, to be filed by the parties presently).

4

the representative of Riverwalk in this matter. (Docket No. 61.)[3] The Magistrate Judge gave such leave on October 11, 2011, and ordered Riverwalk to appear through new counsel within 14 days. They did not do so; a rule to show cause was issued on November 1, 2011. After Riverwalk's continued failure to appear or otherwise respond, and hearings held on November 15, 2011 and December 1, 2011, the Magistrate Judge recommended the entry of default against Riverwalk. (Exhibit 1.)

Counsel for plaintiffs attempted to contact Riverwalk to advise them of the default entered against them, and also an order compelling production of documents relating to its net worth which was entered by the Court. (Exhibit 5.) No response was given. However, it appears that Riverwalk is still a going concern. Mike Cowguill, a representative of Riexinger, testified on February 27, 2012 that Riexinger was still collecting on behalf of Riverwalk. (Exhibit 6.) Coincidentally, Mike Shelton, a representative of Riverwalk who was mentioned by Mr. Cowguill in his testimony (*id.*), was deposed on the very same day, by telephone, in a different action in which Riverwalk was suing a woman in Arizona seeking collection on a debt. (Exhibit 7.) Thus, the decision by Riverwalk to not participate in this case is not because it is out of business, but because it simply chose to not participate.

## II.    CLASS CERTIFICATION MUST BE DECIDED BEFORE DAMAGES ARE AWARDED

While the entry of judgment and the award of damages against Riverwalk at this time would be appropriate under most circumstances, plaintiffs respectfully submit that putative class members have a right to know about the potential award (including the awards to Ms. Jablonski and her counsel). Fed.R.Civ.P. 23(c) and 23(e).

Therefore, plaintiffs respectfully suggest that this Court should rule upon the amended class certification motion (Docket No. 77) first, which is fully briefed by Ms. Jablonski and Riexinger. If and when those classes are certified, those classes should be notified by mail.

---

[3] The same counsel represented, and still represents, Riexinger in this action.

Riverwalk should be directed to produce a class list, and Ms. Jablonski should be directed to send notice of the class action to all class members, so that they may be advised of the case and allowed to exclude themselves if they choose. Riexinger and Baker & Miller also possess information identifying class members, and should provide that information in line with the Court's orders.[4]

### III. DAMAGES

#### A. *Award to the People*

Per disclosures made by Riverwalk (during the time it was actively participating in this case), it was disclosed that Riverwalk collected approximately $220,127.61 from Illinois consumers. Such collection actions taken in 2008, 2009 and 2010 were, and are, nullities, in accord with *LVNV Funding LLC v. Trice*, 2011 IL App (1st) 092773, 952 N.E.2d 1232 (1st Dist. 2011), *leave to appeal denied*, 2011 Ill. LEXIS 1886 (Nov. 30, 2011). *Trice* held that

> **a complaint filed by an unregistered collection agency is... a nullity, and any judgment entered on such a complaint is void. The subsequent registration of the collection agency does not absolve the agency of the crime of debt collection by an unregistered collection agency, and it does not validate a judgment entered on the void complaint. The trial court lacks authority to enter or enforce a judgment in [a debt collector's] favor on a complaint [it] filed in violation of the Act, because to do so would abet [it] in the commission of the crime of debt collection by an unregistered collection agency. 225 ILCS 425/4, 14, 14b (West 2008).**

Therefore, the appropriate relief that can be given by this Court is an injunction prohibiting further collection activity by Riverwalk Holdings, Ltd. within Illinois. Such an injunction is authorized by 225 ILCS 425/14a.

Further, the order granting the injunction sought here may and should require disgorgement of the proceeds of all collection activity previously undertaken in Illinois by

---

[4] Riexinger has identified 343 persons who are members of the class who received communications from its office. Those 343 persons should be specifically identified, so that they may be given a specialized notice advising of the status of Ms. Jablonski's claims against Riexinger. Meanwhile, Baker & Miller has identified 346 persons who are members of the settlement class, with respect to the pending class settlement agreement between Ms. Jablonski and Baker & Miller; under that agreement, Baker & Miller would send notice to all class members.

Riverwalk. Courts are "statutorily authorized to shape its remedy to meet the demands of justice in every case, however peculiar." *Cesena v. DuPage County*, 145 Ill.2d 32, 38-39; 582 N.E.2d 177, 180 (1991). Statutes authorizing "injunctions" in consumer protection cases have been held to authorize disgorgement and restitution of ill-gotten gains. In *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 570-572 (7th Cir. 1989), and *FTC v. QT, Inc.*, 448 F.Supp.2d 908, 957 (N.D.Ill. 2007), *aff'd*, 512 F.3d 858 (7th Cir. 2008), the FTC was seeking relief under §13(b) of the FTC Act, 15 U.S.C. §53(b), which authorizes preliminary and permanent "injunctions" and is thus analogous to 225 ILCS 425/14a. Although 15 U.S.C. §53(b), like 225 ILCS 425/14a, does not explicitly provide that the Court may order the defendant to disgorge its ill-gotten gains, the courts granted exactly that relief:

> [In] *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988), this court adopted the Ninth Circuit's position in [*FTC v. H.N. Singer*, 668 F.2d 1107 (9th Cir. 1982)] that the granting of permanent injunctive power "also gave the district court authority to grant any ancillary relief necessary to accomplish complete justice because it did not limit that traditional equitable power explicitly or by necessary and inescapable inference." *World Travel*, 861 F.2d at 1026....
>
> This reasoning applies with equal force to the issue of whether the granting of permanent injunctive powers also carries with it the power to invoke ancillary equitable relief. Rescission and restitution are proper forms of ancillary relief. All other circuits that have dealt with this issue have found that [15 U.S.C. §53(b)] grants the authority to issue other necessary equitable relief. See, *e.g.*, *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984) (district court has full equitable powers incident to express authority to issue permanent injunction under [15 U.S.C. §53]); [*Singer*, 668 F.2d at 1113] (permanent injunctive power also gives authority for ancillary equitable relief); *FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 718 [(5th Cir. 1982)], *cert. denied*, [456 U.S. 973 (1982)] (grant of jurisdiction in [15 U.S.C. §53(b)] includes authorization for district court to exercise full range of equitable remedies traditionally available).

*Amy Travel Service*, 875 F.2d at 761; *accord*, *QT*, 448 F.Supp.2d at 957. The Court in *QT* ordered the disgorgement of $24.5 million. The Seventh Circuit reiterated that disgorgement is an "appropriate remedy" encompassed within "injunctive relief." *QT*, 512 F.3d at 863-864.

225 ILCS 425/14a also authorizes the award of attorney's fees and costs, which are discussed in Part III, *infra*.

    **B.**     *Award to the putative class as to ICAA and FDCPA claims*

Actual damages can be awarded to the putative classes, as alleged in the complaint and

7

amended motion for class certification (Docket No. 77), in the amount of $220,127.61. Such relief is available under the FDCPA for Riverwalk's violation of 15 U.S.C. §1692k, and the ICAA for Riverwalk's violation of 225 ILCS 425/9. This relief is also available to the People under 225 ILCS 425/14a, as just explained. The judgment should make clear that there is a single recovery, in the amount of $220,127.61, to satisfy plaintiffs' claims for disgorgement under Count I and actual damages to the putative class under Counts II and III.

In addition, Ms. Jablonski seeks punitive damages as to her claim, in Count II, under the ICAA, for herself and a putative class. The award of punitive damages are appropriate here.

Plaintiffs submit that the conduct of Riverwalk was ongoing over several years. During that time, Riverwalk filed hundreds of suits against alleged debtors (including Ms. Jablonski); Baker & Miller admitted, in discovery, that it alone filed 241 lawsuits in Illinois on behalf of Riverwalk. (Docket No. 77, Exhibit 1.) Riverwalk thus took advantage of the laws of Illinois and its courts, without complying with Illinois law as to registration as a collection agency. This constitutes an abuse of the judicial system, and of those affected by Riverwalk's conduct. Beyond that, letters were sent to Illinois consumers, which suggested that Riverwalk had the right to collect money from them; Riexinger, for example, sent 343 letters in 2010 alone. (Docket No. 115, Exhibit 6.) Accordingly, plaintiffs submit that an award of punitive damages of a further $220,127.61 would be appropriate in this case.

When assessing whether an award of punitive damages is appropriate (and if so, what the appropriate amount is), *Lust v. Sealy, Inc.*, 383 F.3d 580, 590 (7th Cir. 2004) instructs this Court to not enter "outlandish awards [which are] not only irrational in themselves [but are] out of whack with any plausible conception of the social function of punitive damages...."

The award of the same amount of punitive damages as the amount of actual damages – $220,127.61 – is rational. Such an award fits well to the purpose of deterring future conduct by Riverwalk, and other unlicensed collection agencies. Thus, an award of this amount of punitive damages is a fair result, and should be ordered.

Any claims of poverty that Riverwalk might have relied upon to evade the award of damages, in any amount, cannot be relied upon at this stage (as Riverwalk is in default), and would be unreliable in any case. Riverwalk contended that it had a negative net worth, but (notwithstanding attempts by counsel to secure an accord), no documentation as to its net worth was produced. (Exhibit 8.) Riverwalk failed to produce such documents even after it was ordered to do so by the Court on November 1, 2011 (after the withdrawal of its counsel). (Exhibit 1.) Such claims of poverty are belied by the fact that Riverwalk is still a going concern; the fact that Riverwalk continues to do business shows, at the very least, that Riverwalk has sufficient funds coming in to operate on a day-to-day basis. The fact that Riverwalk is pursuing litigation in Arizona, with retained counsel, is further evidence to that point. (Exhibits 6 & 7.)

## IV. ATTORNEY'S FEES AND COSTS

Both the ICAA (225 ILCS 425/14a) and the FDCPA (15 U.S.C §1692k) provide for the award of reasonable attorney's fees to a prevailing consumer. To date, plaintiffs' counsel has incurred fees in the total amount of $69,773.00 and costs in the total amount of $3,062.25 – for a total amount of $72,835.25, to date. (Exhibit 9.) However, as shown by the pending motion for preliminary approval of a settlement (Docket No. 92), Ms. Jablonski has agreed to the award of $10,500.00 in attorney's fees and costs as a part of settlement she reached with Baker & Miller (pending Court approval). Therefore, the amount of money that Riverwalk would be liable for is $62,335.25.

The Seventh Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001). Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel must be

compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Counsel filed a well-researched complaint, alleging claims for relief under the ICAA and the FDCPA. Counsel vigorously pursued discovery throughout and, through a default judgment, has prevailed on plaintiffs' claims.

The fee amounts were calculated using the lodestar method, and yields a total amount of time and expense incurred in this litigation, all of which was reasonably incurred for the prosecution of this action. Thus, the award of $62,335.25 would appropriate under all the circumstances.

## V.     INCENTIVE PAYMENT TO GERALYN JABLONSKI

Counsel would suggest that the award of $5,000.00 to Geralyn Jablonski, in addition to other awards, would be appropriate, in order to compensate her for services rendered to the class. Ms. Jablonski has pursued this case, participated in a settlement conference, and has provided responses to written and oral discovery requests; those efforts led to the entry of default against Riverwalk, and the award the Court would provide as a result. Given the size of the relief that would be provided under the judgment, the award of $5,000.00 is proportionate and reasonable under all the circumstances.

## VI.    CONCLUSION

In light of the foregoing, this Court should award to plaintiffs (and putative class members) –

  A.  injunctive relief, in the form of a permanent injunction against Riverwalk Holdings Ltd. from conducting any collection activity;

  B.  relief ancillary to the injunction, in the form of an order directing Riverwalk to disgorge all money that it collected between January 1, 2008 and the present from

        Illinois consumers;

C.    $220,127.61, to be awarded in actual damages as permitted by the ICAA and FDCPA (with plaintiffs receiving one recovery to satisfy claims for disgorgement and for actual damages);

C.    a further $220,127.61, in punitive damages, to be awarded under the ICAA;

D.    one percent of the positive net worth of Riverwalk, in statutory damages under the FDCPA (with Riverwalk directed to turn over, forthwith, all financial information showing its true financial position);

E.    $62,335.25, in attorney's fees and costs; and

F.    $5,000.00, as an incentive award to Geralyn Jablonski, for services rendered to the class.

This Court should also enter any other relief it sees fit, including orders relating to the class certification motion now pending before the Court, and to notification of putative class members.

                                       Respectfully submitted,

                                       /s/ Thomas E. Soule
                                       Thomas E. Soule

Daniel A. Edelman
Thomas E. Soule
EDELMAN COMBS LATTURNER & GOODWIN LLC
120 South LaSalle Street, 18th Floor
Chicago IL 60603
(312) 739-4200
(312) 419-0379 (fax)
courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

  I, Thomas E. Soule, hereby certify that this memorandum, and all exhibits (including a copy of the order entering default judgment against defendant Riverwalk Holdings Ltd.), was filed with the Court on March 15, 2012, and served upon counsel for all defendants in this notice on the same date, by operation of the Court's electronic mailing system.

Justin M Penn (jpenn@hinshawlaw.com)
Denise A. Lazar (denise.lazar@btlaw.com)

  Furthermore, I also served this document, and all exhibits, on the same date upon Riverwalk Holdings Ltd. through its registered agent, and also upon its offices, at a location confirmed in documents attached to this memorandum, by mail, at the following addresses:

Riverwalk Holdings Ltd.
CT Corporation System
350 N. Saint Paul Street, Suite 2900
Dallas TX 75201

Riverwalk Holdings Ltd.
1132 Glade Road
Colleyville TX 76034

                 s/ Thomas E. Soule
                 Thomas E. Soule